IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **LUISA DEL CARMEN TRONCOSO VALERA;**<br><br>    Plaintiff,<br><br>    v.<br><br>**AMERICA CRUISE FERRIES, INC.; BAJA FERRIES USA; BAJA FERRIES S.A. de C.V.; STEAMSHIP MUTUAL MANAGEMENT (BERMUDA) LTD; THE STEAMSHIP MUTUAL UNDERWRITING ASSOCIATION LIMITED (BERMUDA); THE STEAMSHIP MUTUAL UNDERWRITING ASSOCIATION (BERMUDA) LIMITED;**<br><br>    Defendants. | CIVIL NO. 16-2743<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

**TO THE HONORABLE COURT:**

NOW COMES the Plaintiff, **Luisa Del Carmen Troncoso Valera;** through the undersigned attorneys and respectfully alleges and prays as follows:

### I. INTRODUCTION

1. This is a federal question action filed by Plaintiff to redress her injuries suffered due to the intentional and/or negligent acts committed by defendants, related to a chain of negligent acts occurred between August 16 and August 17, 2016.

### II. JURISDICTION AND VENUE

2. This Court has Admiralty and Maritime Jurisdiction and the claim in within the meaning of Fed. R. Civ. P.9 (h). Admiralty and Maritime Jurisdiction is based upon 28 U.S.C. §1331 and 28 USC §1333.

3. Moreover, the jurisdiction in this case is also founded pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between Plaintiff (Dominican Republic) and Defendant, a corporation registered and with place of business in Puerto Rico. Furthermore, the amount in controversy

1

in the Complaint exclusive of interests and costs exceeds seventy five thousand dollars ($75,000.00).

4. Venue of this action in this district is proper pursuant to 28 U.S.C. Sec. 1391 (b), since the incident occurred on the navigable waters of the United States in connection with traditional maritime activity such as ferrying passengers from the Dominican Republic to Puerto Rico aboard the M/V Caribbean Fantasy (herein "Ferry") and/or since defendant consented to be sued in PR Federal Court pursuant to Admiralty and Maritime law.

### III.   REQUEST FOR JURY TRIAL

5. Plaintiff requests trial by jury.

### IV.   PARTIES

6. Plaintiff, **LUISA DEL CARMEN TRONCOSO VALERA,** is an elder woman of 69 years and resident of Calle del Río 264, Santurce, PR 00912 (herein "Troncosco" or "Plaintiff"). Plaintiff was born in January 26, 1947.

7. Defendant **AMERICA CRUISE FERRIES**, **INC.** (herein "ACF") is a corporation duly registered and authorized by the state of Puerto Rico with principal offices in Concordia 249, Mayaguez, PR 00680. Their Resident Agent is: Néstor González García, located at Concordia 249, Mayaguez, PR 00680.

8. Defendant **BAJA FERRIES USA** (herein "BAJA FERRIES") is a corporation duly registered and authorized by the state of Miami, Florida with principal offices in 2601 S Bayshore Dr # 1110, Miami, FL 33133, USA.

9. Defendant **BAJA FERRIES S.A. de C.V.** (herein "BAJA FERRIES") is a corporation duly registered and authorized in Mexico, with the following location: Ignacio Allende 1025, Zona Central, 23000 La Paz, B.C.S., Mexico.

10. Codefendant **STEAMSHIP MUTUAL MANAGEMENT (BERMUDA) LTD**, [hereinafter "P&I"] was and still is a liability insurer incorporated in the Bahamas, who had issued and maintained in full force and effect, at the time of the injury and damages as alleged throughout this Complaint, a policy of liability insurance issued to Baja Ferries SA de CV and/or Baja Ferries USA and/or ACF and/or to the vessel **Caribbean Fantasy**, covering all risks for

2

injuries and accidents that would occur on and within said vessels, and specifically, which would cover liabilities and personal injuries occasioned to crewmembers working aboard the vessel **Caribbean Fantasy.** Steamship Mutual Management (Bermuda) Ltd address is as follows "Washington Mall II, Unit 416 22, Church Street, PO BOX HM 601, Hamilton, HM, CX, Bermuda".

11. Codefendant **THE STEAMSHIP MUTUAL UNDERWRITING ASSOCIATION LIMITED (BERMUDA)**, [hereinafter "P&I"] was and still is a liability insurer incorporated in the Bahamas, who had issued and maintained in full force and effect, at the time of the injury and damages as alleged throughout this Complaint, a policy of liability insurance issued to Baja Ferries SA de CV and/or Baja Ferries USA and/or ACF and/or to the vessel **Caribbean Fantasy**, covering all risks for injuries and accidents that would occur on and within said vessels, and specifically, which would cover liabilities and personal injuries occasioned to crewmembers working aboard the vessel **Caribbean Fantasy.** Said codefendant's address is as follows "Washington Mall II, Unit 416 22, Church Street, PO BOX HM 601, Hamilton, HM, CX, Bermuda".

Codefendant **THE STEAMSHIP MUTUAL UNDERWRITING ASSOCIATION (BERMUDA) LIMITED**, [hereinafter "P&I"] was and still is a liability insurer incorporated in the Bahamas, who had issued and maintained in full force and effect, at the time of the injury and damages as alleged throughout this Complaint, a policy of liability insurance issued to Baja Ferries SA de CV and/or Baja Ferries USA and/or ACF and/or to the vessel **Caribbean Fantasy**, covering all risks for injuries and accidents that would occur on and within said vessels, and specifically, which would cover liabilities and personal injuries occasioned to crewmembers working aboard the vessel **Caribbean Fantasy.** Said codefendant's address is as follows "Washington Mall II, Unit 416 22, Church Street, PO BOX HM 601, Hamilton, HM, CX, Bermuda".

## V.   STATEMENT OF CLAIM

  a. **Information regarding M/V Caribbean Fantasy (herein "The Ferry")**

12. At all relevant times ACF and/or Baja Ferries managed the vessel known as **M/V CARIBBEAN FANTASY**.

13. At all relevant times ACF and/or Baja Ferries operated the vessel known as **M/V CARIBBEAN FANTASY**.

14. At all relevant times ACF and/or Baja Ferries lease the vessel known as **M/V CARIBBEAN FANTASY**.

15. At all relevant times ACF and/or Baja Ferries owned the vessel known as **M/V CARIBBEAN FANTASY**.

At all relevant times ACF and/or Baja Ferries provides maintenance

**b. The incidents**

16. On August 16, 2016, Plaintiff boarded the Ferry for the Voyage from Dominican Republic to PR

17. Plaintiff paid the total amount of approximately $150.00.

18. Since Plaintiff is unable to walk well, she requested a wheel chair and entered the Ferry on wheel chair.

19. On August 16, 2016, Plaintiff boarded the Ferry at approximately 6pm and between 7pm-8pm the Ferry departed.

20. The Ferry carried approximately 512 passengers/crewmembers.

21. Although Plaintiff was happy to return to PR, but their happiness was destroyed when they started noticing the Ferry's defects.

22. Plaintiff boarded the Ferry with one luggage and one personal bag.

23. Since the air conditioning was not working well, Plaintiff complained.

24. Plaintiff noted that there was no good air circulation on the common areas.

25. On August 17, 2016, at around 7am, Plaintiff notice a smell of smoke.

26. Plaintiff noticed that the Ferry started burning and Plaintiff noticed heavy smoke.

4

27. After that, Plaintiff saw a chaotic scene, since people were hysterical, screaming, pushing each other, shouting and some of them even jumped overboard to the ocean.

28. Crewmembers stated that the first ones that will board the life boats were minors, mothers and elders.

29. Plaintiff was instructed to descend by a life boat.

30. Plaintiff was ordered to leave her personal bag with a crewmember.

31. Plaintiff waited approximately one hour for the life boat to be lowered to the ocean since the life boat got stuck.

32. Plaintiff waited approximately one hour for the life boat to get down since the life boat got stuck.

33. While descending to the water, once against it got stuck the life boat, and it started hitting the Ferry.

34. Plaintiff had a feeling that the life boat would break in any time.

35. The passengers aboard the life boat were desperate and it almost tip over the life boat.

36. No seat belt was available at the life boat.

37. Thus while onboard the life boat she had the feeling that she could fall to the ocean anytime.

38. The life boat was not prepared for this emergency.

39. Despite being on the ocean, the life boat continue striking with the Ferry since no effort was made to get away the ferry.

40. Since Plaintiff hit his leg while the life boat was striking the ferry, she was in deep pain.

41. Approximately after one hour and a half of thinking that the life boat will sink any moment, the life boat finally arrived to port.

42. Plaintiff felt extremely anxious, desperate and start praying and fearing for her life.

43. Defendants returned Plaintiff her luggage but lost Plaintiff's personal bag.

5

44. Plaintiff is unable to travel without her passport and is unable to communicate since she does not have a cellphone and has no money to buy a new one.

45. Such bag had medicines, cellphone, bible and her passport.

### FIRST CAUSE OF ACTION – NEGLIGENCE

46. The allegations contained all in previous paragraphs are re-alleged as if fully alleged herein.

47. The Ferry was built in 1989 in Japan, and is Baja Ferries property.

48. The Ferry's flag is from Panamá.

49. The Ferry do commercial activities between Dominican Republic and Puerto Rico such as ferrying passengers.

50. Between 2011 and 2015, the US Coast Guard found at least 107 security deficiencies, which most of the them (approximately 44) were related to the fire system.

51. Some of those deficiencies were related to the incorrect operating of the fire screen doors, which usually were not able to be close and/or were reported as open when they were close.

52. On an October 16, 2014, Inspection made by the USCG stated that the "inflatable liferafts used in conjunction with MES shall comply with the requirements of Section 4-2. The liferafts 4, 13,17,18 &24 were found with the painter lines falling off the liferaft line storage pockets".

53. A January 2015 inspection made by the United States Coast Guard ("herein "USCG") stated that oil fuel lines should be screened or protected in some way to avoid any pray or leakage onto ignition sources.

54. Specifically in April 17, 2015, the USCG stated that the "fire screen doors shall be capable of closing at an angle of inclination of up to 3.5 degrees. The following double leaf doors were found out of sequencing and prevents the doors from closing" and that "all waste receptables shall be constructed of non combustible materials. Waste receptacles located on upper deck (open) were found to be plastic".

55. During the past 36 months, USCG's inspections of the Ferries had led to detentions.

56. In October, 2015, the Ferry was detained in San Juan for three days by the U.S. Coast Guard for three deficiencies related: fire safety measures (international shore connection); crew certificates (certificates of competency) and ship's certificates and documents (safety manning document).

57. Other warnings provided by the US Coast Guard were that the fire extinguishers were not working well.

58. The US Coast Guard found deficiencies on the ceiling sprinklers that stop the flames.

59. Between March and July 2016, the Ferry underwent maintenance work at Europe.

60. Even though defendants informed the public that they would start operating on July 1, 2016, they were unable to provide ferrying service to passengers since the Ferry was still in Europe receiving maintenance.

61. In July 2016, while refueling the Ferry at Port of Gibraltar, prior to continuing across the Atlantic to Puerto Rico, the Ferry was detained for six days and related to deficiencies related to the auxiliary engines.

62. After the alleged repairs at the Port of Gibraltar, the Ferry continued its voyage to Puerto Rico.

63. While in their voyage, the Ferry's engines failed.

64. The ferry was unable to continue their voyage for approximately a day.

65. Due to said mechanical failure, the Ferry changed its voyage and travel to Santo Domingo, Dominican Republic.

66. At the Santo Domingo's Port, the Ferry allegedly repaired the engine.

67. Early August, 2016, the Ferry arrived at the Port of San Juan, Puerto Rico.

68. During the USCG inspection, they determined that one of three life boats were working.

7

69. A USCG inspection early August 2016, found four deficiencies related to fire safety measures and one related to the propulsion and auxiliary machinery.

70. During August 17, 2016's emergency, the Ferry's life boats and sliding were not working properly and/or were not properly installed.

71. Two of the three life boats were not working well.

72. One life boat got stuck while descending.

73. The second life boat, got stuck while descending to the ocean and when it reached the ocean its engines failed.

74. This second life boat, was rescued by other vessel and/or vessels.

75. During the voyage from Santo Domingo to San Juan, and while Plaintiff was onboard the Ferry, the air conditioner was not working well and/or was not working at all.

76. Such was an indication of mechanical and/or electrical failure.

77. Due to information and/or belief the Fire started at 7.15 am at the machinery room.

78. The Fire at the Ferry started when the Ferry was near the Thermoelectric in Levittown, PR.

79. Defendants lack of repair and/or failure to provide proper maintenance to the Ferry and/or failure to properly and immediately repair the deficiencies informed by the USCG on their report dated August 17, 2016, among others, provoked the fire inside the Ferry.

80. Plaintiff's damages were a direct consequence of defendants' negligence by: (i) failing to provide a safe ferry; (ii) failing to protect the passengers; (iii) failing to maintain safe premises; (d) failing to provide adequate emergency instructions; (iv) by failing to hire adequate personnel which were not well trained and/or had lack of knowledge on emergency proceedings and/or had lack of knowledge on descending life boats; (v) by failing to repair and/or properly repair the engine, electric and/or propulsion defects; (vi) Defendants knew or should have known of the Ferry's mechanical, electrical and/or propulsion defects and did not repair it and/or failed to properly repair

8

them; (vii)  Defendants' breached their duty of care to Plaintiff to the extent they failed to properly maintain properly working the life boats and other safety equipment; (viii)  defendant provoked Plaintiff unnecessary delay in the evacuation of the Ferry; (ix) failed to cancel the voyage despite knowing that the vessel was not properly working; (x) the Ferry was operated knowing was unseaworthy due to the defective engines, life boats, electricity, air conditioners, emergency equipment and procedures.

81. Due to the abovementioned, defendants failed to comply with the general maritime and admiralty law of the United States and with the Art. 1802 and 1803 of the PR Civil Code.

82. Defendants actions and omissions, through fault and/or negligence, caused damages to Plaintiff, in violation of Art. 1802 and 1803 of the PR Civil Code and General Maritime Law entitling plaintiff to damages caused as a result of those acts and omissions.

83. Defendants are jointly liable against Plaintiff.

84. Defendants' negligence and/or intentional acts were a proximate legal cause of Plaintiff's injury.

85. On the other hand, as previously mentioned, Plaintiff bought her ticket for the voyage departing on August 16, 2016 from Santo Domingo, Dominican Republic, to Puerto Rico.

86. Plaintiff paid the total amount of approximately $150.00.

87. In view that Plaintiff was unable to enjoy the Ferry and the Ferry was unable to reach the Port that was hired, then Defendants shall reimburse Plaintiff the total amount of approximately $150.00 and an amount equivalent to $1,000.00 in view that defendants lost plaintiff's personal bag with the objects that were described above.

### SECOND CAUSE OF ACTION – UNSEAWORTHINESS

88. The allegations contained all in previous paragraphs are realleged as if fully alleged herein.

89. Defendants maintained an unsafe place for plaintiff and exposed them to danger while ferrying passengers with a Ferry with serious engine,

electricity and propulsion defects and also with the life boats, mechanical and technical defects, as abovementioned.

90. The vessel was unseaworthy and defendants' failed to repair the dangerous situation.

91. Plaintiff's injuries occurred as a proximate result of the unsafe and unseaworthy condition of the vessel, which was managed, operated and/or maintained by defendants. In addition, said injuries were caused in whole, as a proximate result of negligence on the part of the Defendants, its agents, servants and/or employees.

### THIRD CAUSE OF ACTION AGAINST THE P&I CLUB

92. The foregoing paragraphs are realleged and reasserted herein.

93. Co-defendants **STEAMSHIP MUTUAL MANAGEMENT (BERMUDA) LTD; THE STEAMSHIP MUTUAL UNDERWRITING ASSOCIATION LIMITED (BERMUDA); THE STEAMSHIP MUTUAL UNDERWRITING ASSOCIATION (BERMUDA) LIMITED;** is liable for the negligence, fault, legal violations and unseaworthy conditions of their insured up to the coverage limit of the certificate of entry to their benefit. Plaintiff hereby exercises her right to present a direct action against the aforementioned protection and indemnity club.

### DAMAGES

94. As a result thereof, plaintiff suffered and continue suffering: right leg pain, she saw the death coming by and genuinely thought she would die, also suffered from post traumatic stress disorder, unable to get close to the ocean, psychiatric and psychological damages, extreme panic, sadness, a sense of despair and helplessness, a lack of interest in daily activities, sleep disturbances such as nightmares, anxiety, her tranquility has been seriously affected, all of which affects her daily activities.

95. Plaintiff will never travel again on a ferry.

96. Plaintiff damages herein alleged apply to all causes of actions.

97. As a result of the events described herein, Plaintiff has suffered and continues to suffer irreparable physical, economical and emotional damages.

## VI. RELIEF

98. Wherefore, Plaintiff prays that this court enter judgment in favor of Plaintiff and against defendants and award the plaintiff the following monetary amounts, totaling $1,201,150.00 to be paid by defendants:

   a. for Plaintiff emotional and physical damages and his pain and suffering an amount in excess of $1,000,000.00.

   b. Punitive damages for an amount not less than $200,000.00.

   c. For Economic Damages, an amount not less than $1,150.00

   d. Provide for the payment of all applicable interests, including prejudgment interest, together with reasonable attorney's fees, litigation expenses and the costs of this action.

   e. Grant plaintiff such other and further relief as the Court may deem appropriate and proper and retain jurisdiction over this action in order to assure full compliance with any decree issued by this court.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 28th day of September, 2016.

**BELLVER ESPINOSA LAW FIRM**
Condominio El Centro I, Suite 801
500 Muñoz Rivera Avenue
San Juan, Puerto Rico 00918
Tel(787) 946-5268/Fax(787)946-0062

S/Alejandro Bellver Espinosa
Alejandro Bellver Espinosa, Esq.
U.S.D.C. – P.R. 225708
Email: alejandro@bellverlaw.com

/s/ Krystal Santiago Sánchez
Krystal Santiago Sánchez, Esq.
U.S.D.C. – PR 303611
Email: krystal@bellverlaw.com